**Nos. 24-12638 & 24-12639**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

THE LANE CONSTRUCTION CORPORATION,
*Plaintiff-Counter Defendant-Appellant,*

WEBUILD S.P.A.,
*Counter Defendant-Appellant,*

v.

SKANSKA USA CIVIL SOUTHEAST, INC.; GRANITE CONSTRUCTION COMPANY,
*Defendants-Counter Claimants-Appellees,*

SKANSKA-GRANITE-LANE, JOINT VENTURE,
*Counter Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of Florida (Orlando Division)
No. 6:21-cv-00164-RBD-DCI (Hon. Roy B. Dalton, Jr.)

---

**ANSWER BRIEF OF COUNTER CLAIMANT-APPELLEE,
GRANITE CONSTRUCTION COMPANY**

---

Christopher J. Olsen
HENNER & SCARBROUGH LLP
14 Ridge Square NW, Suite 300
Washington, DC 20016
Phone: (470) 531-3070
colsen@henscarlaw.com

Joseph P. Henner
Tyler P. Scarbrough
HENNER & SCARBROUGH LLP
2000 RiverEdge Pkwy, Suite 550
Atlanta, GA 30328
Phone: (470) 531-3077
jhenner@henscarlaw.com
tscarbrough@henscarlaw.com

*Counsel for Granite Construction Company*

December 23, 2024

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

In accordance with 11th Circuit Rule 26.1, undersigned counsel for Granite Construction Company ("Granite") certifies that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.    Alston & Bird LLP, Attorney for Skanska-Granite-Lane, a Joint Venture

2.    Arch Insurance Company (NASDAQ: ACGL)

3.    Baker & Hostetler LLP, Attorney for The Lane Construction Corporation and Webuild S.p.A.

4.    Brodsky, Jerry P., Attorney for Skanska USA Civil Southeast, Inc.

5.    Chin, Kesang S., Attorney for Skanska USA Civil Southeast, Inc.

6.    Dalton, Jr., Roy B., U.S. District Judge for the Middle District of Florida

7.    Dyl, Shelby L., Attorney for The Lane Construction Corporation and Webuild S.p.A.

8.    Fombrun, Charles E., Attorney for Skanska USA Civil Southeast, Inc.

9.    Frederick, David C., Attorney for The Lane Construction Corporation and Webuild S.p.A.

10.    Friedman, Warren E., Attorney for Skanska USA Civil Southeast, Inc.

11.    Gans, Jeffrey, Attorney for The Lane Construction Corporation and Webuild S.p.A.

12.    Granite Construction Company, Defendant-Counter Claimant-Appellee

13.    Granite Construction, Inc. (NYSE: GVA) (parent of Granite Construction Company)

14.    Hanover, John, Attorney for Skanska-Granite-Lane, a Joint Venture

15.    Henner & Scarbrough, LLP, Attorney for Granite Construction Company

16.    Henner, Joseph, Attorney for Granite Construction Company

17.    Hoogstraten, Nick R., Attorney for Skanska USA Civil Southeast, Inc.

18.    Hornreich, Michael A., Attorney for Skanska-Granite-Lane, a Joint Venture

19.    Irick, Daniel C., U.S. Magistrate Judge for the Middle District of Florida

20.    Kapetanovic, Kathleen, Attorney for Granite Construction Company

21.    Kellogg, Hansen, Todd, Figel, & Frederick PLLC, Attorney for The Lane Construction Corporation and Webuild S.p.A.

22.    Lane Industries, Inc. (parent corporation of Lane Construction Corporation)

23.    McLean, Hannah, Attorney for Skanska-Granite-Lane, a Joint Venture

24.  McNamara, Michael S., Attorney for The Lane Construction Corporation and Webuild S.p.A.

25.  Meller, Bruce D., Attorney for Skanska USA Civil Southeast, Inc.

26.  Okwara, Arabella, Attorney for Skanska-Granite-Lane, a Joint Venture

27.  Olsen, Christopher J., Attorney for Granite Construction Company

28.  Peckar & Abramson, P.C., Attorney for Skanska USA Civil Southeast, Inc.

29.  Pillsbury Winthrop Shaw Pittman, LLP, Attorney for The Lane Construction Corporation and Webuild S.p.A.

30.  Scarbrough, Tyler, Attorney for Granite Construction Company

31.  Schiffman, Kelley, Attorney for The Lane Construction Corporation and Webuild S.p.A.

32.  Shanlever, Michael H., Attorney for Skanska-Granite-Lane, Joint Venture

33.  Skanska AB, a Swedish corporation ("SKA-B.ST")

34.  Skanska USA, Inc.

35.  Skanska USA Civil, Inc.

36.  Skanska USA Civil Southeast, Inc., Defendant-Counter Claimant-Appellee

37.  Skanska-Granite-Lane, Joint Venture, Counter-Defendant, Appellee

38.  Stein, Gary M., Attorney for Skanska USA Civil Southeast, Inc.

39. The Lane Construction Corporation, Plaintiff-Counter Defendant-Appellant

40. Thielhelm, Jr., Robert W., Attorney for The Lane Construction Corporation and Webuild S.p.A.

41. Webuild S.p.A., an Italian corporation ("WBD.MI"), Counter Defendant-Appellant (whole owner of Webuild US Holdings, Inc.)

42. Webuild US Holdings, Inc. (whole owner of Lane Industries, Inc.).

43. Weinberg Wheeler Hudgens, Gunn & Dial, LLC, Attorney for Skanska-Granite-Lane, a Joint Venture

44. XL Specialty Insurance Company

45. Zingone, Gerald, Attorney for The Lane Construction Corporation and Webuild S.p.A.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Granite Construction Company is a wholly-owned subsidiary of Granite Construction, Inc., a publicly-traded corporation (NYSE: GVA).

## STATEMENT REGARDING ORAL ARGUMENT

Granite Construction Company ("Granite") respectfully submits that oral argument is unnecessary because: (i) the dispositive issues have been authoritatively decided; and (ii) the appellants, The Lane Construction Corporation ("Lane") and Webuild S.p.A ("Webuild"), have failed to adequately challenge two grounds for the district court's entries of summary judgment and final judgment in Granite's favor. *See* Fed. R. App. P. 34(a)(2)(B). Specifically, the district court entered summary judgment on liability in Granite's favor on its three claims for breach of contract, indemnification, and breach of guaranty. (JA997.[1]) Following a bench trial, the district court then entered a single award of damages on those three claims in the principal amount of $30,450,997.15. (JA4675-4676.)

In this Court, neither Lane nor Webuild have challenged the district court's entries of summary judgment or final judgment on Granite's claims for indemnification or breach of guaranty. Because the final judgment in Granite's favor is independently supported on those two unchallenged claims alone, Granite respectfully submits that oral argument would not significantly aid this Court's decision process. *See* Fed. R. App. P. 34(a)(2)(C).

---

[1] "JA" refers to Lane and Webuild's Joint Appendix.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS.................................................C-1

CORPORATE DISCLOSURE STATEMENT .....................................................C-4

STATEMENT REGARDING ORAL ARGUMENT...................................................i

TABLE OF CONTENTS ..................................................................... ii

TABLE OF CITATIONS.........................................................................v

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION......xi

INTRODUCTION .................................................................................1

STATEMENT OF THE ISSUES ...............................................................4

STATEMENT OF THE CASE....................................................................4

    I.    STATEMENT OF FACTS...............................................................4

        A.    Project Background..................................................................4

        B.    Allocation & Financing of Losses Incurred by SGL ..................5

            1.    Working Capital Calls Issued Through the End of 2020..7

            2.    Lane Repudiates Obligations to Pay Working Capital Calls in January 2021................................................................8

            3.    SGL's Losses are Financed Exclusively by Skanska SE and Granite After January 2021.....................................12

            4.    Overpayments Relative to Proportionate Share .............14

            5.    Remedy-Granting Provisions in the Parties' Contracts..15

                i.    Article 3 of the JVA...............................................15

ii.     Article 8 of the JVA ...............................................15

iii.    The CGIA .............................................................17

II.    PROCEDURAL HISTORY & RULINGS PRESENTED FOR REVIEW .............................................................................17

A.    Granite's Counterclaims Against Lane and Webuild ................17

B.    Summary Judgment ......................................................18

C.    Bench Trial & Post-Trial Briefing .............................................22

D.    Final Judgment.........................................................................23

STANDARDS OF REVIEW ...............................................................................25

SUMMARY OF THE ARGUMENT ....................................................................27

ARGUMENT .......................................................................................................29

I.    THE DISTRICT COURT'S ENTRY OF SUMMARY JUDGMENT MUST BE AFFIRMED.....................................................................29

A.    Lane materially breached the JVA by refusing to make working capital contributions...............................................................29

1.    There was no genuine dispute that the parties complied with the JVA in issuing the January 2021 Capital Call ..30

2.    The entry of summary judgment should be affirmed because Lane repudiated its obligations to pay the January 2021 Capital Call and the issuance of a unilateral call would have been futile....................................................33

3.    Lane's challenge to the district court's analysis on Granite's breach of contract claim should be rejected ...36

B.    Lane and Webuild abandoned any challenge to the entry of summary judgment on Granite's indemnification claims.........38

iii

C.      Webuild forfeited any challenge to the entry of summary judgment on Granite's breach of guaranty claim.......................41

II.    THE DISTRICT COURT'S FINAL JUDGMENT MUST BE AFFIRMED BECAUSE LANE AND WEBUILD DO NOT CHALLENGE THE ENTRY OF JUDGMENT ON GRANITE'S CLAIMS FOR INDEMNIFICATION AND BREACH OF GUARANTY. ...............................................................................42

III.   THE DISTRICT COURT'S AWARD OF PREJUDGMENT INTEREST MUST BE AFFIRMED....................................................43

A.      Lane forfeited its sole challenge to the district court's award of prejudgment interest...................................................44

B.      Granite was entitled to prejudgment interest as a matter of law and the district court's award of prejudgment interest at the statutory rate should be affirmed ...............................................48

C.      If the judgment is modified, the Court should direct the district court to award prejudgment interest up through the date of the modified judgment ...................................................................50

CONCLUSION ..................................................................................................51

CERTIFICATE OF COMPLIANCE ....................................................................53

CERTIFICATE OF SERVICE .............................................................................54

iv

# TABLE OF CITATIONS

**Cases**

*Access Now, Inc. v. Southwest Airlines Co.*,
   385 F.3d 1324 (11th Cir. 2004)................................................................44

*Alvarez v. Rendon*,
   953 So. 2d 702 (Fla. 5th DCA 2007).........................................................34

*AM Grand Court Lakes LLC v. Rockhill Ins. Co.*,
   68 F.4th 1354 (11th Cir. 2023).................................................................48

*Argonaut Ins. Co. v. May Plumbing Co.*,
   474 So. 2d 212 (Fla. 1985) .......................................................27, 48, 49, 50

*Asdale v. Int'l Game Tech.*,
   549 F. App'x 611 (9th Cir. 2013)..............................................................47

*Bailey v. Metro Ambulance Servs., Inc.*,
   992 F.3d 1265 (11th Cir. 2021).................................................................25

*Baker v. Upson Reg'l Med. Ctr.*,
   94 F.4th 1312 (11th Cir. 2024).................................................................25

*Balboa Capital Corp. v. Vital Pharmaceuticals, Inc.*,
   No. 21-13263, 2023 WL 2609628 (11th Cir. Mar. 23, 2023).......................47

*Blasland, Bouck & Lee, Inc. v. City of North Miami*,
   283 F.3d 1286 (11th Cir. 2022).................................................................26

*Carlson v. FedEx Ground Package Systems, Inc.*,
   787 F.3d 1313 (11th Cir. 2015).................................................................43

*Celotex Corp. v. Buildex, Inc.*,
   476 So. 2d 294 (Fla. 3d DCA 1985)...........................................................49

*Compulife Software, Inc. v. Newman*,
   111 F.4th 1147 (11th Cir. 2024) ...............................................................45

*Craigside, LLC v. GDC View, LLC,
   74 So. 3d 1087 (Fla. 1st DCA 2011) ............................................................36

*DSLRPros, Inc. v. Lalo,
   339 So. 3d 379 (Fla. 3d DCA 2021).................................................48, 49, 50

Eastern Mountain Platform Tennis, Inc. v. Sherwin-Williams Co., Inc.,
   40 F.3d 492 (1st Cir. 1994) ..........................................................................47

Ellis v. England,
   432 F.3d 1321 (11th Cir. 2005)....................................................................25

Fidelity & Guar. Ins. Co. v. Ford Motor Co.,
   707 F. Supp.2d 1300 (M.D. Fla. 2010).........................................................40

Fitzpatrick v. City of Atlanta,
   2 F.3d 1112 (11th Cir. 1993) ..................................................................25, 33

Gareis v. 3M Co.,
   9 F.4th 812 (8th Cir. 2021)...........................................................................41

*Gemini Ins. Co. v. Zurich Am. Ins. Co.,
   119 F.4th 1296 (11th Cir. 2024)..................................................26, 27, 48, 51

Gorel v. Bank of New York Mellon,
   165 So. 3d 44 (Fla. 5th DCA 2015)..............................................................32

Green Tree Servicing, LLC v. Milam,
   177 So. 3d 7 (Fla. 2d DCA 2015)................................................................31

Hamilton Bank, N.A. v. Kookmin Bank,
   245 F.3d 82 (2d Cir. 2001)...........................................................................50

HGI Assocs., Inc. v. Wetmore Printing Co.,
   427 F.3d 867 (11th Cir. 2005)......................................................................26

Hosp. Mortg. Grp. v. First Prudential Dev. Corp.,
   411 So. 2d 181 (Fla. 1982) ..........................................................................33

*Ins. Co. of N. Am. v. Lexow*,
　937 F.2d 569 (11th Cir. 1991)..................................................................49

*Jenkins v. Nell*,
　26 F.4th 1243 (11th Cir. 2022)...............................................................29

*Kel Homes, LLC v. Burris*,
　933 So. 2d 699 (Fla. 2d DCA 2006).................................................49, 50

*Kellner v. NCL (Bahamas), LTD.*,
　753 F. App'x. 662 (11th Cir. 2018)..........................................................43

*Lance Toland v. Phoenix Ins. Co.*,
　855 F. App'x 474 (11th Cir. 2021)............................................................40

*Land Co. of Osceola Cty., LLC v. Genesis Concepts, Inc.*,
　169 So. 3d 243 (Fla. 4th DCA 2015)..................................................30, 31

*Lapham v. Walgreens Co.*,
　88 F.4th 879 (11th Cir. 2023)............................................................25, 33

*Maytronics, Ltd. v. Aqua Vac Systems, Inc.*,
　277 F.3d 1317 (11th Cir. 2002)................................................................26

*Millennium Partners, L.P. v. Colmar Storage, LLC*,
　494 F.3d 1293 (11th Cir. 2007)....................................................26, 27, 48

*Mori v. Matsushita Elec. Corp. of Am.*,
　380 So. 2d 461 (Fla. 3d DCA 1980).........................................................33

*Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co.*,
　233 F. App'x 890 (11th Cir. 2007)............................................................51

*Novum Structures, LLC v. Choate Constr. Co., Inc.*,
　698 F. App'x 608 (11th Cir. 2017)......................................................40, 41

*Okada v. Whitehead*,
　759 F. App'x 603 (9th Cir. 2019).............................................................42

*O'Laughlin v. Palm Beach Cnty.*,
     30 F.4th 1045 (11th Cir. 2022)..........................................................40

*Phillips v. Legacy Cabinets*,
     87 F.4th 1313 (11th Cir. 2023)..........................................................25

*Pizarro v. Home Depot, Inc.*,
     111 F.4th 1165 (11th Cir. 2024) .......................................................25

*Poer v. Jefferson Cnty. Comm'n*,
     100 F.4th 1325 (11th Cir. 2024)........................................................25

*PTA-FLA, Inc. v. ZTE USA, Inc.*,
     844 F.3d 1299 (11th Cir. 2016)..........................................................xi

*Rowe v. Schreiber*,
     139 F.3d 1381 (11th Cir. 1998)..........................................................39

*Sapuppo v. Allstate Floridian Ins. Co.*,
     739 F.3d 678 (11th Cir. 2014)..................................................39, 41, 42, 43

*SEB S.A. v. Sunbeam Corp.*,
     476 F.3d 1317 (11th Cir. 2007)......................................................48, 51

*Secrist v. Nat'l Service Indus., Inc.*,
     395 So. 2d 1280 (Fla. 2d DCA 1981).................................................49

*Singh v. United States Att'y Gen.*,
     561 F.3d 1275 (11th Cir. 2009)..........................................................39

*Stewart v. Dep't of Health & Human Servs.*,
     26 F.3d 115 (11th Cir. 1994)..............................................................44

*Terrell v. Secretary, Dep't of Veterans Affairs*,
     98 F.4th 1343 (11th Cir. 2024)..........................................................29

*Timson v. Sampson*,
     518 F.3d 870 (11th Cir. 2008)............................................................41

viii

*Trigeorgis v. Trigeorgis*,
240 So. 3d 772 (Fla. 4th DCA 2018)................................................................49

*United States v. Frank*,
599 F.3d 1221 (11th Cir. 2010)........................................................................26

*U.S. Commodity Futures Trading Comm'n v. Southern Trust Metals, Inc.*,
894 F.3d 1313 (11th Cir. 2018)........................................................................26

*Venn v. St. Paul Fire & Marine Ins. Co.*,
99 F.3d 1058 (11th Cir. 1996)....................................................................26, 48

*\*Waksman Enters., Inc. v. Oregon Props., Inc.*,
862 So. 2d 35 (Fla. 2d DCA 2003)..............................................................34, 36

*Walker v. Jones*,
10 F.3d 1569 (11th Cir. 1994).........................................................................44

**Statutes**

28 U.S.C. § 1291 ........................................................................................... xii

28 U.S.C. § 1332 ............................................................................................xi

28 U.S.C. § 1367 ............................................................................................xi

Fla. Stat. Ann. § 687.01................................................................................48, 49

**Court Rules**

Fed. R. App. P. 34............................................................................................i

Fed. R. App. P. 37(b)........................................................................................51

Fed. R. Civ. P. 56(a) ......................................................................................25

**Other Authorities**

Restatement (Second) of Contracts § 254 (1979)...................................................33

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had jurisdiction over the claims asserted by Lane against Skanska USA Civil Southeast, Inc. ("Skanska SE") pursuant to 28 U.S.C. § 1332(a) because Lane was a citizen of Connecticut, Skanska SE was a citizen of Virginia, and the amount in controversy exceeded $75,000. *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016) ("[D]iversity jurisdiction is determined at the time of filing the complaint or, if the case has been removed, at the time of removal.").

The district court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the counterclaims asserted by Granite[2] and Skanska SE, on the one hand, against Lane and its ultimate parent company, Webuild, on the other hand, because the counterclaims were so related to Lane's claims that they formed part of the same case or controversy under Article III of the U.S. Constitution. Further, the district court had supplemental jurisdiction over Skanska SE's counterclaims against SGL notwithstanding SGL's citizenship. *See PTA-FLA*, 844 F.3d at 1311-12 & n.5 (agreeing with the First, Second, Third, Fourth, Fifth, and Sixth Circuits that "claims by plaintiffs" in § 1367(b) "refers to claims by only the <u>original</u> plaintiffs to the

---

[2] Granite is a citizen of California.

x

action—not third-party plaintiffs, counter plaintiffs, or cross plaintiffs" (emphasis in original)).

The district court entered final judgment and disposed of all parties' claims on July 26, 2024. Lane and Webuild filed notices of appeal on August 13, 2024, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

**<u>INTRODUCTION</u>**

SGL has incurred more than $500 million in losses in connection with the design and construction of the I-4 Ultimate Improvement Project ("Project"). Under their joint venture agreement ("JVA"), Skanska SE (the managing party) is responsible for paying 40%, and Granite and Lane are each responsible for paying 30%, of SGL's losses. In January 2021, Lane sued Skanska SE for breach of fiduciary duty and gross negligence, and declared it would stop paying its share of SGL's losses. From January 2021 through the October 2023 trial date, Skanska SE and Granite collectively paid $275,610,000 to prevent SGL from defaulting on its obligations to subcontractors, taxpayers, and the traveling public. Lane paid nothing, and wanted interest-free financing on the $80 million it effectively borrowed from its joint venture partners while it pursued a conspiracy theory against Skanska SE.

Granite was not named as a defendant or accused of any wrongdoing. To the contrary, Lane claimed that Skanska SE's alleged misconduct caused equivalent harm to Lane and Granite since each was responsible for paying 30% of SGL's losses. Granite intervened in this action and sued Lane and Webuild to recover more than $30 million that Granite paid in excess of its 30% share, asserting claims under the JVA and Cross-Guaranty and Indemnification Agreement ("CGIA") for breach of contract, indemnification, and breach of guaranty.

1

With no dispute that Lane refused to pay working capital calls or that Granite had paid more than its share of SGL's losses, the district court entered summary judgment in Granite's favor on liability for all three claims. Following a bench trial, the district court entered final judgment in Granite's favor, holding Lane and Webuild jointly and severally liable on all three claims for $30,450,997.15 plus interest. But on appeal, Lane and Webuild do not challenge the district court's entries of summary judgment or final judgment on the indemnification and breach of guaranty claims. On these unchallenged claims alone, the final judgment in favor of Granite can be affirmed.

Lane does challenge the district court's entry of summary judgment on Granite's breach of contract claim, but the undisputed facts showed that the parties complied with the conditions precedent to issuing working capital calls under the JVA. After Lane defaulted and was removed from SGL's Executive Committee, Lane developed an excuse that—despite the undisputed fact that SGL needed tens of millions of dollars each month to pay subcontractors and suppliers—no one actually had to contribute money to SGL because Lane made a self-serving decision not to sign a working capital request form in January 2021. This theory never had legal merit, but it became wholly immaterial once Lane repudiated its obligations to pay capital calls and conceded it was never going to pay capital calls under any

2

circumstances. Summary judgment was properly granted on Granite's breach of contract claim.

Lane also complains that the district court awarded prejudgment interest to Granite at Florida's statutory rate. But this Court need not reach the merits of this argument because Lane never raised it below. In fact, Lane asked the district court to award statutory prejudgment interest to Granite starting on May 3, 2024. Now on appeal, Lane says the district court was prohibited from awarding statutory prejudgment interest in the first place. Notwithstanding its failure to preserve that challenge below, and without citation to any legal authority here, Lane claims the district court's "exclusive mechanism" for awarding interest was a higher contractual rate and, because the district court did not award interest at *that* rate, it was prohibited from awarding interest at *any* rate. This argument conflicts with well-settled Florida law and, had it been raised, would have been rejected by the district court. Assuming the Court reaches this argument on appeal, it should be rejected here.

The district court's decisions to enter summary judgment and final judgment in favor of Granite and against Lane and Webuild should be affirmed in full. Even if this Court found that a genuine dispute of material fact existed on Granite's breach of contract claim, the final judgment entered in Granite's favor would nevertheless be affirmed on Granite's indemnification and breach of guaranty claims since Lane and Webuild challenge neither on appeal.

## STATEMENT OF THE ISSUES

1.  Whether the district court properly granted summary judgment (i) on Granite's claim for breach of contract where there was no genuine dispute that Lane breached its obligations to contribute working capital and pay its share of SGL's losses, and (ii) on Granite's claims for indemnification and breach of guaranty, assuming Lane and Webuild have not abandoned that issue on appeal.

2.  Whether Lane and Webuild's decision not to challenge the entries of summary judgment or final judgment on Granite's indemnification and breach of guaranty claims requires that the final judgment be affirmed, regardless of whether the district court properly granted summary judgment on Granite's breach of contract claim.

3.  Whether Lane and Webuild forfeited their challenge to Granite's entitlement to an award of prejudgment interest at Florida's statutory rate or, assuming that issue has been preserved, whether the award should be affirmed.

## STATEMENT OF THE CASE

### I.    STATEMENT OF FACTS

#### A.    Project Background

The Project is a public-private partnership developed by the Florida Department of Transportation ("FDOT") to reconstruct, operate, and maintain a 21-

4

mile stretch of I-4 that runs from west of Kirkman Road in Orange County, through downtown Orlando, to east of State Road 434 in Seminole County. (JA1036-1043.)

In 2014, Skanska SE, Granite, and Lane entered into the JVA and formed SGL to submit a proposal to I-4 Mobility Partners OPCO LLC ("I4MP") for the design-build contract for the Project. (JA1036-1037.) SGL was awarded the contract and entered into the Design-Build Agreement ("DBA") with I4MP in September 2014. (JA1038.) Construction of the Project began in February 2015, and substantial completion was achieved in 2022. (JA1039; JA4099.) The Project had not achieved final acceptance at the time of trial. (JA4445.)

SGL incurred significant losses in connection with construction of the Project. At the time of trial, SGL was projecting a net loss of $504,267,079. (JA4180; JA4367-4368.)

### B.    Allocation & Financing of Losses Incurred by SGL

Article 3 of the JVA memorializes the parties' agreement on the allocation of profits, losses, and liabilities. (JA1094-1095.) Section 3.2, titled "Losses, Liabilities Not To Exceed Proportionate Share," requires each party to "assume and pay its Proportionate Share of [SGL's] losses" arising from performance of the work under the DBA. (JA1095.[3]) Skanska SE has a 40% proportionate share. (JA1037.) Granite

---

[3] Each party's obligation to pay its proportionate share of SGL's losses is also set forth in section 20.1 of the JVA: "Each Party shall indemnify and hold harmless the

5

and Lane each have a 30% proportionate share. (JA1037.) Relevant here, Skanska SE was responsible for paying 40%, and Granite and Lane were each responsible for paying 30%, of the $504 million in losses incurred by SGL. (JA1037.)

There was no dispute that Skanska SE and Granite paid far more, and that Lane paid far less, than their respective proportionate shares of SGL's losses. (JA2274-2275.) When one party pays losses in excess of its proportionate share "for any reason," then "the other Parties shall indemnify, hold harmless and shall reimburse such Party" so that the parties return to their original proportionate shares. (JA1095.) Indemnification is not permitted if the liabilities or losses result from the indemnitee's "willful misconduct or bad faith." (JA1095 (§ 3.2).) Lane did not sue Granite or otherwise allege that SGL's losses resulted from any "willful misconduct or bad faith" on the part of Granite. (JA1095 (§ 3.2); JSA175.[4])

In general, SGL's losses were financed through the issuance of working capital calls under Article 7 of the JVA. (JA2274-2275; JA4368.) Under section 7.1, each party is required to "contribute Working Capital when and as required by a unanimous vote of the Executive Committee for the performance and completion of the [DBA], in accordance with its Proportionate Share." (JA1041; JA1099.) "The need for Working Capital and the dates on which it is to be furnished shall be

___

others from losses or expenses in excess of their Proportionate Share, subject to subparagraph 3.2." (JA1109.)

[4] "JSA" refers to the appellees' Joint Supplemental Appendix.

6

determined by the unanimous vote of the Executive Committee," an event defined in section 7.1 as a "Working Capital Call." (JA1099 (§ 7.1).) Therefore, as a condition precedent to SGL's issuance of an Article 7 working capital call, there must be unanimous consent among the SGL Executive Committee members as to (i) the "need for Working Capital" and (ii) "the dates on which it is to be furnished." (JA1099 (§ 7.1).)

If unanimous consent is not obtained for a working capital call, then Skanska SE (the managing party) can issue a unilateral working capital call. (JA1099 (§ 7.1).) In that scenario, a dissenting party who "disputes the need for or the amount of the Working Capital Call" may call for an audit, but nevertheless must "continue to meet the Working Capital Call requirements" subject to adjustment at the conclusion of the audit. (JA1099 (§ 7.2).)

Under Article 8, a party is in default if it's "unable or fail[s] or neglect[s] to contribute its Proportionate Share of the Working Capital within fourteen (14) days" after the date set by the SGL Executive Committee (by unanimous consent) or by Skanska SE (if a unilateral call). (JA1099 (§ 8.1).) This provides a 14-day grace period to make the outstanding contribution and avoid a default.

### 1. Working Capital Calls Issued Through the End of 2020

SGL's Executive Committee began issuing unanimous working capital calls in 2018 to finance SGL's forecasted losses on the Project. (JA1041-1043; JA2274-

7

2275.) Through the end of 2020, Skanska SE, Granite, and Lane collectively paid $174 million in net working capital contributions to SGL in accordance with their respective proportionate shares: $69.6 million from Skanska SE; and $52.2 million each from Granite and Lane. (JA2274-2275; JSA1259.) The last working capital call paid by Lane was issued on November 10, 2020, when SGL requested $19 million from the partners, including $5.7 million from Lane, to be paid on or before December 14, 2020. (JA1043; JA2274-2275.) Lane made its payment on December 24, 2020 (within the 14-day grace period) and refused to contribute any working capital thereafter. (JA1043; JA2274-75; JSA157-158.)

### 2. Lane Repudiates Obligations to Pay Working Capital Calls in January 2021

As it relates to Granite's claims, Lane's principal challenge on appeal is that the district court erred in finding Lane liable for openly refusing to pay the working capital call due in January 2021 ("January 2021 Capital Call").[5] (Appellants' Br. at 27-28.)

The SGL Executive Committee met on December 15, 2020 to discuss, among other things, cash flow projections for the remainder of the Project and the need for working capital from the partners. (JSA92; JSA254-256.) A document titled "I-4

---

[5] Granite will refer to working capital calls by the month and year they were due. For example, the capital call due on January 11, 2021 is referred to as the January 2021 Capital Call.

Cash Flow – December 2020" was distributed to the SGL Executive Committee and discussed at the meeting. (JSA92; JSA254-256.) This document set forth the working capital calls anticipated through June 2022, including a $21 million working capital call in January 2021 and a $26 million working capital call in February 2021. (JSA92; JSA256.)

After the December 15 meeting, Michele Gorasso—a Lane employee—circulated a January 2021 "Working Capital Request" to the SGL Executive Committee for review and approval. (JSA258-261.) The Working Capital Request detailed the need for working capital ($21 million) and the date on which it was to be furnished (January 11, 2021). (JSA261.) Lane's Executive Committee member, Jose Penalver, reviewed the Working Capital Request and responded: "I review it and it looks ok to me." (JA727; JSA263.) Lane contends that Mr. Penalver's email response did not amount to approval of the Working Capital Request. (Appellants' Br. at 49-50.)

On December 16, 2020, after receiving written approvals from the three members of the Executive Committee, SGL issued the January 2021 Capital Call and requested $21 million from the partners, including $6.3 million from Lane, to be paid by January 11, 2021. (JA2274-2275; JSA93; JSA265-268.) Lane conceded that SGL needed $21 million in working capital for January 2021. (JSA192; JSA195 ("[A]ctually, Jose said there is a need for it.").) But Lane admitted it was never going

to pay this capital call under any circumstances. (JSA196 ("At this point, Lane was not going to pay this call. We were heading toward litigation.").) This is because Webuild directed Lane to sue Skanska SE and to stop contributing working capital to SGL. (JSA197 (acknowledging that Lane's non-payment was "directed from the parent company").)

On January 14, 2021, SGL requested $25 million from the partners, including $7.5 million from Lane, to be paid by February 9, 2021 ("February 2021 Capital Call"). (JA1043; JA2224-2275; JSA270-273.) By January 14, *i.e.*, within the 14-day grace period for the January 2021 Capital Call, Lane had decided it would not contribute any more working capital to SGL and would refuse to pay the outstanding capital calls. (JSA199.) This was not communicated to Skanska SE and Granite until January 22, 2021. (JSA196; JSA275-276.)

Under section 8.1 of the JVA, Lane had until January 25, 2021 to pay the January 2021 Capital Call and avoid a default. (JA1099.) But on January 22, 2021—with three days remaining for performance—Lane filed its lawsuit and declared to Skanska SE and Granite it would not "make any further capital contributions starting with the January [2021 Capital] Call." (JA743.) In its letter, Lane did not state that the January or February 2021 Capital Calls had not been approved. (JA743-744.) Instead, Lane said it wasn't going to pay because "Skanska SE's actions and

10

inactions constitute an ongoing and material breach of the [JVA] that relieve Lane of its obligations to continue performance." (JA743.)

During the litigation, Lane emerged with its argument that the January 2021 Capital Call was never approved because—although Mr. Penalver agreed that SGL needed $21 million in January, then "review[ed]" the Working Capital Request and said "it looks ok"—Mr. Penalver never signed a form. (JA727; JA798-799.) In Lane's view, Mr. Penalver's signature on the Working Capital Request was a condition precedent to Lane's obligation to pay the January 2021 Capital Call. (JA869.) And because Lane had not yet voted on the January 2021 Capital Call at the time it filed suit, says Lane, it had no obligation to pay it. (JSA194.) But Lane admitted it was never going to make the payment anyways:

> [GRANITE'S COUNSEL:] "So I understood your testimony earlier that by not signing this working capital request form, that that was, in and of itself, a no vote by Lane, correct," was read back by the reporter.
> [LANE'S REPRESENTATIVE:] Yeah, again, at this time, that the – *the issuance of the lawsuit, from Lane's view, overrode all this, what was going on with these requests.*
> . . .
> [GRANITE'S COUNSEL:] Okay. *So it didn't matter whether this cash call was agreed to or not, Lane wasn't paying it; fair statement?*
> [LANE'S COUNSEL:] Object to the form.
> [LANE'S REPRESENTATIVE:] *At this point, Lane was not going to pay this call. We were headed toward litigation.*

(JSA195-196 (emphasis added).) And Lane admitted it was never going to pay the February 2021 Capital Call due on February 9. (JSA199.)

After failing to pay the January 2021 Capital Call and stating its intention to not make any further working capital contributions, Lane was placed in default and removed from the Executive Committee in accordance with section 8.2 of the JVA. (JSA279-280.) Lane would have the district court (and this Court) believe that Skanska SE and Granite should have continued to seek Lane's approval of working capital calls that Lane explicitly said it would never pay (JSA196-199); that Skanska SE and Granite should have waited until 14 days after the due date *each month* to see if Lane made the payment or signed the form before remitting their own payments; and that Skanska SE should have issued a unilateral call under section 4.3(b), which requires 10 business days' notice,[6] that Lane *still* would not have paid. (JSA199.) It is difficult to imagine an act more futile than seeking Lane's approval of capital calls it unequivocally stated it would never pay. (JSA199; JSA275.)

### 3. SGL's Losses are Financed Exclusively by Skanska SE and Granite After January 2021

After Lane's default and subsequent removal from the Executive Committee, the remaining representatives from Skanska SE and Granite unanimously approved working capital calls to finance SGL's losses. (JSA95.) Lane paid none of them and

---

[6] "In no event shall the Managing Party provide less than ten (10) business days' notice requiring such contribution." (JA1099 (§ 7.1).)

had underpaid its proportionate share by nearly $80 million at the time of trial in October 2023. (JSA95; JSA1494-1495.)

At trial, William McGuinness, SGL's Project Director, described the harm to SGL resulting from Lane's refusal to pay working capital calls. (JA4430-4431.) SGL immediately stopped paying invoices submitted by Skanska SE, Granite, and Lane for labor and materials they had furnished to the Project, and stopped making lease payments on equipment. (JA4430.) SGL had to delay payments to subcontractors and suppliers and struggled financially to "survive with [Lane's] capital call shortfall." (JA4431.) Granite understood that the SGL partners were jointly and severally liable for SGL's financial obligations, so "as Lane was failing to make payments, Granite was going to have to pay more along with Skanska [SE] to ensure the project did not fail." (JA4371.) SGL was able to avoid a default caused by Lane's non-payment because Granite and Skanska SE paid amounts far in excess of their proportionate shares. (JA4168-4169.)

From the start of the Project through the time of trial, SGL had received $449,610,000 in net cash contributions from the three partners: $229,050,000 from Skanska SE; $168,360,000 from Granite; and $52,200,000 from Lane. (JA2274-2275 (row labeled "Net Capital Call Requests/Contributions").) In addition, the unpaid invoices submitted by Skanska SE, Granite, and Lane for labor and materials furnished to the Project were reclassified as working capital contributions. (JA2275;

13

JA4184.) The parties stipulated in a joint exhibit that SGL had received the following net contributions from Skanska SE, Granite, and Lane:

| Category | Skanska SE | Granite | Lane | Total |
|---|---|---|---|---|
| Net Capital Call Contributions | $229,050,000.00 | $168,360,000.00 | $52,200,000.00 | $449,610,000.00 |
| Reclassified Invoices | $14,892,617.20 | $8,313,899.73 | $14,593,158.35 | $37,799,675.28 |
| **Total** | **$243,942,617.20** | **$176,673,899.73** | **$66,793,158.35** | **$487,409,675.28** |

(JA2274-2275; JA4466.) Calculating each party's overpayment or underpayment relative to its 40% or 30% proportionate share followed from there.

### 4.    Overpayments Relative to Proportionate Share

Had each partner contributed its proportionate share of the $487,409,675.28 needed to pay SGL's losses at the time of trial, then Skanska SE would have contributed $194,963,870.11 (40%), and Granite and Lane would have each contributed $146,222,902.58 (30%). (JSA1494-1495; JA4222-4223.) Instead, Skanska SE contributed $243,942,617.20 (50.05%) and overpaid its proportionate share by $48,978,747.09. (JA4188; JA4371; JA2274-2275; JSA1494-1495.) Granite contributed $176,673,899.73 (36.25%) and overpaid its proportionate share by $30,450,997.15. (JA4188; JA4189; JA4236-4237; JA4371; JA4372; JA4410; JA2274-2275; JSA1494-1495.) Lane contributed $66,793,158.35 (13.70%) and underpaid its proportionate share by $79,429,744.23. (JA4370-4371; JA2274-2275; JSA1494-1495.)

14

So, to restore all three parties to their original proportionate shares, *i.e.*, where they would have been had Lane paid its 30% share, Lane needed to pay $30,450,997.15 to Granite and $48,978,747.09 to Skanska SE. (JA4370-4372.) Lane and Webuild presented no evidence to the contrary and do not challenge this calculation on appeal.

### 5.    Remedy-Granting Provisions in the Parties' Contracts

Granite sought a single award of damages against Lane and Webuild in the amount of $30,450,997.15 (plus interest) on its claims for breach of contract, indemnification, and breach of guaranty. (JA1032-1033.) Applicable remedy-granting provisions in the parties' contracts are discussed below.

#### i.    Article 3 of the JVA

Granite brought a claim under Article 3 of the JVA, which requires Lane to "indemnify, hold harmless and . . . reimburse" Granite so that the parties return to their original proportionate shares. (JA248; JA1095 (§ 3.2).) In Lane's words, "Article 3.2 provides a separate avenue for a party to recover if it contributes more than its proportionate share *for any reason*." (JSA1517 (italics in original).)

#### ii.    Article 8 of the JVA

Granite also brought a claim against Lane for breaching its obligations to contribute working capital and sought to recover the $30,450,997.15 in overpayments resulting from Lane's breaches. (JA246-247; JA1032-1033.) Under

Article 8, after Lane failed to pay a working capital call within the 14-day grace period, Skanska SE and Granite had an "option" to pay all or part of Lane's contribution, and the payment would be treated as a demand loan subject to the conditions found in subsections (c) through (f). (JA1099-1100 (§§ 8.1-8.2).) Among other conditions, demand loans are immediately repayable without notice and bear interest at 3% above the "Prime Lending Rate" declared by JP Morgan Chase Bank of New York. (JA1100 (§ 8.2(c)).)

Regardless of whether Skanska SE and Granite elected to make demand loans, section 8.4 required Lane to "indemnify and hold harmless [SGL] and the Non-Defaulting Parties for any expense, loss, claims or liabilities including all legal fees, court costs, disbursements and expenses incurred as a result of the Defaulting Party's breach of its obligation to make Working Capital contributions." (JA1100-1101.)

As explained in more detail below, Granite maintained throughout the litigation that: (i) a portion of its working capital overpayments ($24,960,000.00 of the $30,450,997.15) should be treated as demand loans under section 8.2, entitling Granite to a higher interest rate; and (ii) regardless of whether the payments were demand loans, Granite was entitled to recover its attorneys' fees and costs under section 8.4. (JA1033-1034.)

16

### iii.    The CGIA

Although not discussed in any detail in Lane's brief, Webuild is liable to Skanska SE and Granite pursuant to the CGIA, executed in 2014 by Skanska SE, Granite, Lane, and their respective parent companies. (JA1037-1038.) Salini Impregilo S.p.A. replaced Lane's former parent company (Lane Industries, Inc.) in 2016 and changed its name to Webuild in 2020. (JA1037-1038; JSA282-296.) Accordingly, Webuild is Lane's guarantor under the CGIA. (JA332.)

Under the CGIA, and in relevant part, Webuild guaranteed Lane's performance of all obligations under the JVA and agreed to indemnify Granite for payments made in excess of Granite's proportionate share of losses under the JVA. (JSA282-286 (§§ 1-4).) These remedies "are separate and cumulative," and Granite was not required to obtain a judgment against Lane "as a condition precedent to bringing any action based on th[e] [CGIA]." (JSA284 (§ 6).)

## II.    PROCEDURAL HISTORY & RULINGS PRESENTED FOR REVIEW

### A.    Granite's Counterclaims Against Lane and Webuild

On January 22, 2021, Lane sued Skanska SE for breach of fiduciary duty (Count I) and gross negligence (Count II), and sought a declaration (Count III) it was "no longer required to make capital contributions or other payments to SGL or Skanska SE." (JA75-80.) Granite was not named as a defendant or otherwise accused

17

of any wrongdoing. (JA60.) Skanska SE's motion to dismiss the complaint was denied on July 29, 2021. (JA15.)

On August 27, 2021, Granite moved to intervene as a defendant on Count III of Lane's complaint and proposed to file an answer and counterclaim against Lane and Webuild in four counts: breach of the JVA against Lane (Count I); indemnification under the JVA against Lane (Count II); indemnification and breach of guaranty under the CGIA against Webuild (Count III); and declaratory judgment against Lane and Webuild (Count IV). (JA15 (Doc. 58).) Granite's motion to intervene was granted on September 7, 2021. (JA16 (Doc. 71).) After amending its counterclaim twice (JA221-237; JA238-255), Lane and Webuild filed answers on October 21, 2021 (JA307-324; JA325-342).

## B.    Summary Judgment

After the close of discovery, Granite moved for summary judgment on all claims. (JSA49-86.)

**Count I (Breach of JVA against Lane).** Granite argued there was no genuine dispute that: (i) the January 2021 Capital Call was unanimously approved in conformance with the JVA; (ii) Lane breached by anticipatorily repudiating its obligations to make any further working capital contributions; and (iii) assuming Lane's approval of the January 2021 Capital Call was a condition precedent and there was a genuine dispute as to Lane's approval, performance of that condition was

18

excused as futile since Lane conceded it was never going to make the payment anyways. (JSA72-74; JSA368-369.)

In response, Lane argued: (i) there was a genuine dispute as to whether it approved the January 2021 Capital Call because Lane did not sign a form (JSA302-304); (ii) Lane did not anticipatorily repudiate its obligations because it committed to "leaving its work forces and other resources on the project until the work is complete" (JSA311); and (iii) seeking Lane's approval would not be futile because Lane never said it wouldn't pay "*validly issued* Working Capital Calls." (JSA312 (italics in original).)

During oral argument on the parties' dispositive motions, Judge Dalton and Lane's counsel engaged in the following colloquy regarding points (ii) and (iii):

> THE COURT: [Granite's counsel's] argument is, essentially, that [the absence of Lane's signature on the form] is an explanation of convenience. Right? It's not the real reason that Lane withheld payment. [Granite's counsel's] argument is this explanation of convenience, as I will call it, of a lack of compliance with the unanimity requirement is something that Lane is relying upon to support its litigation position, but it's not the real reason that they didn't pay. I'm not saying that's true. I'm just saying that's what I understand the argument to be.
>
> [LANE'S COUNSEL]: I appreciate that. That may be. My response to that is whether there was one or ten reasons Lane didn't make the call, there was no validly issued call. So it doesn't matter –
>
> THE COURT: ***But it does matter. It does matter, Counsel, in the sense that if the record demonstrates that Lane was***

19

> ***not going to pay irrespective of compliance with the
> contract in terms of how the call was to be issued, if the
> evidence supports that position, then you lose on that
> point.***

(JA949-950 (emphasis added).)

The district court entered summary judgment in Granite's favor on liability, concluding that "Lane's refusal to pay the capital calls materially breached the JVA." (JA995.) Lane's argument that it didn't need to pay the January 2021 Capital Call unless it signed the request form was rejected as a "red herring" since there was substantial compliance with the notice provision in the JVA, and Skanska SE could have acted unilaterally under section 4.3 even if Lane had raised an objection. (JA995-996.) As evidenced by the discussion on the record, the district court considered but ultimately did not need to reach Granite's anticipatory repudiation and futility arguments. (*Compare* JA949-950, *with* JA995-996.)

On appeal, Lane challenges the district court's entry of summary judgment on the grounds that there was a genuine dispute as to whether Lane breached its obligation to pay the January 2021 Capital Call (and all subsequent capital calls). (Appellants' Br. at 49-50.)

**Count II (Indemnification Against Lane).** Granite argued it was entitled to summary judgment on its Article 3 indemnification claim because there was no genuine dispute that: (i) Granite paid more than its proportionate share of SGL's losses; (ii) Lane paid less than its proportionate share of SGL's losses; and (iii) SGL's

20

losses were not caused by Granite's willful misconduct or bad faith. (JSA74-75; JSA364-366.)

In response, Lane did not take issue with points (ii) and (iii). Instead, Lane argued Granite may have paid more than its proportionate share in the aggregate, but it did not pay more than its proportionate share of any individual capital call. (JSA312-314.) Lane further argued that, even if Granite overpaid its proportionate share of losses, those payments were "voluntary contributions" to SGL. (JSA313.)

The district court rejected Lane's arguments and entered summary judgment in Granite's favor on liability. (JA997.) Although Lane acknowledges that the district court awarded damages and prejudgment interest on Granite's Article 3 indemnification claim (Appellants' Br. at 56), Lane does not challenge the district court's entry of summary judgment (or final judgment) on this claim.

**Count III (Breach of Guaranty and Indemnification Against Webuild).** Granite argued it was entitled to summary judgment because, under the CGIA, Webuild had guaranteed Lane's Article 3 indemnification obligations and Article 7 working capital obligations and had promised to indemnify Granite for amounts paid in excess of Granite's proportionate share. (JSA75-76.) Lane responded that, because Granite was not entitled to summary judgment on its claims against Lane, Granite was not entitled to summary judgment on the corresponding claims against Webuild. (JSA314-315.)

21

After concluding that Lane was liable for breach of contract and indemnification, the district court entered summary judgment in Granite's favor on liability against Webuild. (JA997.) Webuild does not challenge the district court's entry of summary judgment (or final judgment) on this claim.[7]

**Damages.** Granite sought a single award of damages on its claims, plus interest and attorneys' fees. (JSA76-77.) The district court ruled there was a genuine dispute as to "how much each partner has or should have paid up until this point according to their proportional shares" and set a bench trial to determine the amount of damages, if any, to be awarded to SGL, Skanska SE, and Granite. (JA997-998.)

### C.    Bench Trial & Post-Trial Briefing

At trial, Granite sought a single award of damages ($30,450,997.15) and presented the district court with two potential calculations of prejudgment interest.[8] (JA1032-1034.) For its primary calculation, Granite argued that the contractual demand loan rate should be applied to $24,960,000 of its overpayments, and that Florida's statutory rate should be applied to the remaining $5,490,997.15. (JA1033-1034.) Granite argued, in the alternative, that Florida's statutory rate should be applied by default to the entire award ($30,450,997.15) if the district court concluded

---

[7] The district court dismissed without prejudice the parties' competing claims for declaratory relief (Count IV of Granite's counterclaim).

[8] Lane did not challenge the *amount* sought by Granite at trial ($30,450,997.15), nor does it challenge the award here on appeal. Rather, Lane argued that Skanska SE should have to pay that amount to Granite. (JA1031.)

that the demand loan rate was inapplicable. (JA1034.) Summary exhibits for each calculation were admitted into evidence without objection, and Lane presented no alternative calculation for the district court to consider. (JA4382; JA4386; JA4387-4388; JSA1258-1260.)

At trial and in its post-trial brief, Lane and Webuild argued that Granite was not entitled to interest at the contractual demand loan rate but said nothing about Granite's entitlement at Florida's statutory rate. (JA4578-4580.) Accordingly, as discussed below, Lane and Webuild forfeited any challenge to the district court's application of Florida's statutory rate.

## D.    Final Judgment

On May 3, 2024, Judge Dalton issued the Memorandum Opinion & Order and held, in relevant part, that Granite was due $30,450,997.15 plus interest from Lane and Webuild, jointly and severally, on Granite's claims for breach of contract, indemnification, and breach of guaranty. (JA4639-4641.) As to whether Granite was entitled to the higher contractual interest rate on a portion of its overpayments, Judge Dalton held that Granite "made no payments that constituted demand loans."[9] (JA4640.) Judge Dalton directed the parties to "submit a joint proposed final judgment" with "the appropriate calculation of prejudgment interest" and for

---

[9] Granite did not cross-appeal this aspect of the district court's decision.

Skanska SE and Granite to file separate motions for attorneys' fees and costs. (JA4641.)

On May 17, 2024, Lane and Webuild, on the one hand, and Skanska SE, Granite, and SGL, on the other hand, filed separate proposed final judgments. (JA4651-4671; JSA1496-1512.) Lane and Webuild actually agreed that Skanska SE and Granite were entitled to prejudgment interest at Florida's statutory rate, but claimed that they were "not entitled to prejudgment interest . . . ***for the period prior to the Court's May 3, 2024 Memorandum Opinion and Order*** because the Court did not determine the amount of damages or the theory under which they were owed at that time."[10] (JA4652 (emphasis added).) Judge Dalton accepted Skanska SE and Granite's proposed final judgment, held that it "captured the Court's ruling in awarding interest from the time of Lane's improper refusal to contribute working capital," and incorporated the accompanying prejudgment interest calculations. (JA4672-4674; JSA1496-1512.)

Final judgment was entered on July 26, 2024, and Lane and Webuild each filed a notice of appeal on August 13, 2024. (JA4679-4682; JA4684-4685; JA4687-4688.)

---

[10] In the district court, Lane asked the district court to award Granite $124,333.13 in prejudgment interest through May 17, 2024, plus $7,770.82 per day until the entry of final judgment. (JA4659.) In this Court, Lane says the district court should have actually awarded $0.

24

## STANDARDS OF REVIEW

This Court reviews the "grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in its favor." *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1172-73 (11th Cir. 2024) (citing *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1316-17 (11th Cir. 2024)). "Summary judgment should be granted when the record demonstrates that no genuine dispute exists concerning any material fact, and the movant is entitled to judgment as a matter of law." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1272 (11th Cir. 2021) (citing Fed. R. Civ. P. 56(a)). A dispute is only "genuine" if "it has a real basis in the record and the evidence is such that a reasonable jury could rule in favor of the nonmovant." *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1320 (11th Cir. 2023) (citing *Ellis v. England*, 432 F.3d 1321, 1325-26 (11th Cir. 2005)). And a fact is only "material" if it could affect the outcome of the suit under governing law. *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1335 (11th Cir. 2024). Further, in its review of the district court's decision, this Court "may affirm a grant of summary judgment 'if there exists any adequate ground for doing so, regardless of whether it is . . . one on which the district court relied.'" *Lapham v. Walgreens Co.*, 88 F.4th 879, 889 (11th Cir. 2023) (quoting *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1117 (11th Cir. 1993)).

25

On appeal from a judgment in a bench trial, the district court's "findings of fact . . . are evaluated under the clear-error standard." *U.S. Commodity Futures Trading Comm'n v. Southern Trust Metals, Inc.*, 894 F.3d 1313, 1322 (11th Cir. 2018) (citing *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 873 (11th Cir. 2005)). The district court's conclusions of law and application of the law to the facts are reviewed de novo. *Id.* (citing *HGI*, 427 F.3d at 873; *United States v. Frank*, 599 F.3d 1221, 1228 (11th Cir. 2010)).

This Court has reviewed decisions to award prejudgment interest under both de novo and abuse of discretion standards. *Compare Gemini Ins. Co. v. Zurich Am. Ins. Co.*, 119 F.4th 1296, 1299 (11th Cir. 2024) ("We review the decision to award prejudgment interest for abuse of discretion.") (citing *Blasland, Bouck & Lee, Inc. v. City of North Miami*, 283 F.3d 1286, 1298 (11th Cir. 2022)), *and Maytronics, Ltd. v. Aqua Vac Systems, Inc.*, 277 F.3d 1317, 1321-22 (11th Cir. 2002) (holding that the district court did not abuse its discretion in concluding that the jury's verdict had the effect of establishing a date on which damages became due to support award of prejudgment interest), *with Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1304 (11th Cir. 2007) ("'Whether a successful claimant is entitled to prejudgment law is a question of state law,' subject to de novo review.") (quoting *Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir. 1996)). Since a successful plaintiff is entitled to prejudgment interest as a matter of law, *see*

*Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985), issues of entitlement should be reviewed de novo, *see Millennium Partners*, 494 F.3d at 1304. On the other hand, whether the district court properly weighed equitable considerations—an issue Lane did not raise in relation to Granite's claims—would be reviewed for abuse of discretion. *See Gemini Ins.*, 119 F.4th at 1303-04.

## SUMMARY OF THE ARGUMENT

I.     The district court properly granted Granite's motion for summary judgment, finding Lane liable for breach of contract and indemnification, and finding Webuild liable for indemnification and breach of guaranty.

A.     As to Granite's claim against Lane for breach of the JVA, there was no genuine dispute that SGL complied with the JVA's requirements for issuing working capital calls, and that Lane failed to pay the January 2021 Capital Call within the 14-day grace period, triggering a default and Lane's removal from SGL's Executive Committee. Even if there had been a genuine dispute as to whether SGL complied with the JVA's requirements for issuing working capital calls, that fact became immaterial on January 22, 2021 when Lane unequivocally repudiated its obligations to contribute working capital, and the issuance of unilateral working capital calls would have been undisputably futile.

B.     As to Granite's claims against Lane and Webuild for indemnification, there is not a single argument in their opening brief as to why

27

summary judgment was improperly granted on this claim, let alone a "discrete, substantial portion" of the brief. Assuming the issue had been preserved, the entry of summary judgment would have been affirmed because there was no genuine dispute that Granite paid more—and Lane paid less—than their proportionate shares, entitling Granite to indemnification under section 3.2 of the JVA and the corresponding provision of the CGIA.

C.    As to Granite's claim against Webuild for breach of guaranty, there is no mention of this claim in the brief, so the entry of summary judgment must be affirmed. Assuming the issue had been preserved, the entry of summary judgment would have been affirmed because there was no genuine dispute that Webuild was liable for Lane's failures to pay its share of losses and contribute working capital.

II.    The entry of final judgment in Granite's favor must be affirmed because Lane and Webuild do not adequately challenge two independent grounds upon which the district court entered final judgment: the indemnification and breach of guaranty claims.

III.    The district court's award of prejudgment interest at Florida's statutory rate must be affirmed. Lane argued below that the district court should have awarded interest at the statutory rate, but beginning on May 3, 2024 and no sooner. Here, Lane argues for the first time that the district court was prohibited from awarding interest at the statutory rate. Lane forfeited this issue by not raising it below and, in

28

any event, Lane's argument conflicts with well-settled Florida law regarding the application of contractual and statutory interest rates. In the event this Court modifies the final judgment, Granite is entitled to statutory prejudgment interest up through the entry of the modified final judgment on remand.

## ARGUMENT

## I. THE DISTRICT COURT'S ENTRY OF SUMMARY JUDGMENT MUST BE AFFIRMED.

The district court entered summary judgment in Granite's favor on liability, holding that Lane was liable for breach of contract and indemnification, and that Webuild was liable for breach of guaranty and indemnification. (JA1002.) This Court reviews that decision de novo. *See Terrell v. Secretary, Dep't of Veterans Affairs*, 98 F.4th 1343, 1351 (11th Cir. 2024) (quoting *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022)). For the reasons discussed below, the district court's entry of summary judgment as to each of Granite's claims should not be disturbed on appeal.

### A. Lane materially breached the JVA by refusing to make working capital contributions.

As to Lane's liability for breach of contract, there was no genuine dispute that the parties substantially complied with the JVA requirements for issuing the January 2021 Capital Call. Further, even if this Court found a genuine dispute on that issue, that dispute is rendered immaterial by Lane's unequivocal repudiation of its working capital obligations, and its concession it was never going to pay the January 2021

29

Capital Call anyways. It would have been undeniably futile to await Lane's input on capital calls, or to issue unilateral capital calls, when Lane told its partners it would never pay them. The entry of summary judgment can and should be affirmed for any of these reasons.

### 1. There was no genuine dispute that the parties complied with the JVA in issuing the January 2021 Capital Call.

The district court held that "Lane defaulted and materially breached" because it was undisputed that SGL issued working capital calls and Lane failed to pay them. (JA995.) Responding to Lane's argument that it never signed "working capital request forms" for the capital calls, the district court held that was a red herring because: (i) Skanska SE could just issue a unilateral capital call and Lane would have to pay anyways; (ii) technical problems with the January 2021 Capital Call did not excuse Lane's non-performance because the parties substantially complied with the JVA's requirements; and (iii) Lane conceded that SGL needed cash from the partners, "[s]o any quibbles Lane has over the amounts called go to damages, not liability." (JA995-996.) The district court's decision was legally correct.

*First*, there was no genuine dispute that SGL's Executive Committee complied with the requirements for issuing the January 2021 Capital Call. Under Florida law, "[c]onditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Land*

*Co. of Osceola Cty., LLC v. Genesis Concepts, Inc.*, 169 So. 3d 243, 247 (Fla. 4th DCA 2015) (quotation omitted). The parties' "adherence to contractual conditions precedent is evaluated for substantial compliance or substantial performance." *Green Tree Servicing, LLC v. Milam*, 177 So. 3d 7, 13 (Fla. 2d DCA 2015).

No reasonable factfinder could conclude that SGL failed to substantially comply with the requirement to obtain unanimous consent as to (i) the "need for Working Capital" and (ii) "the dates on which it is to be furnished." Lane agreed that SGL needed $21 million in January 2021. (JSA192; JSA195 ("[A]ctually, Jose said there is a need for it.").) Mr. Penalver reviewed the request, said it looked "ok" to him, and then sat in silence after the capital call was issued. (JSA258-263.) Lane acknowledged that the January 2021 Capital Call had been issued when it declared it would not "make any further capital contributions starting with the January [2021 Capital] Call." (JSA275-276.) If Lane genuinely believed that SGL had not substantially complied with the unanimity requirement, it would have said so in its January 22, 2021 letter. Instead, Lane said it wouldn't pay the pending capital call (or any future capital calls) because of Skanska SE's alleged misconduct. (JSA275.) The district court correctly held that the parties complied with section 7.1 of the JVA in issuing the January 2021 Capital Call, and that Lane materially breached by refusing to pay its share. (JA995-996.)

31

*Second*, as the district court correctly noted, Lane's self-serving decision not to sign a form for the January 2021 Capital Call was a "red herring." (JA996.) Lane agreed that SGL needed $21 million in January 2021. (JSA195 ("[A]ctually, Jose said there is a need for it.").) But in Lane's view, because *Lane* did not approve the January 2021 Capital Call, *Skanska SE* was required to invoke section 4.3(b) as a condition precedent to Lane's obligation to pay it. (Appellants' Br. at 53.) This argument must be rejected.

For a unilateral section 4.3(b) capital call, as the district court correctly noted, "if Lane had problems with the call it still had to pay during the dispute." (JA996.) So regardless of whether the January 2021 Capital Call was issued unanimously (by the SGL Executive Committee) or unilaterally (by Skanska SE), Lane still owed $6.3 million to cover its share of SGL's losses for January 2021. Lane even acknowledges on page 55 (footnote 22) of its brief that it would not have invoked the option to have an independent audit performed if, hypothetically, Skanska SE had issued a unilateral call. This is because Lane never disputed SGL's need for $21 million. So, Lane was not prejudiced by the fact that the request came from SGL instead of Skanska SE because—under either scenario—Lane still owed $6.3 million. *See Gorel v. Bank of New York Mellon*, 165 So. 3d 44, 47 (Fla. 5th DCA 2015) (party must show "some prejudice" in order to raise breach of condition precedent as a

32

defense). The failure to pay $6.3 million by January 25, 2021 was a material breach of the JVA and constituted a default. (JA995.)

> **2.** **The entry of summary judgment should be affirmed because Lane repudiated its obligations to pay the January 2021 Capital Call and the issuance of a unilateral call would have been futile.**

This Court "may affirm a grant of summary judgment 'if there exists any adequate ground for doing so, regardless of whether it is . . . one on which the district court relied.'" *Lapham*, 88 F.4th at 889 (quoting *Fitzpatrick*, 2 F.3d at 1117). Because there was no genuine dispute that Lane unequivocally repudiated its obligations to contribute working capital, and that the issuance of a unilateral capital call under section 4.3(b) would have been futile, the entry of summary judgment can be affirmed on these independent grounds.

"A prospective breach of contract occurs when there is absolute repudiation by one of the parties prior to the time when his performance is due under the terms of the contract. Such a repudiation may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute." *Mori v. Matsushita Elec. Corp. of Am.*, 380 So. 2d 461, 463 (Fla. 3d DCA 1980). Repudiation gives rise to a claim for damages and discharges the non-breaching party's remaining duties to render performance. *See Hosp. Mortg. Grp. v. First Prudential Dev. Corp.*, 411 So. 2d 181, 182-83 (Fla. 1982) (quoting Restatement (Second) of Contracts § 254 (1979)). Similarly, "[u]nder the doctrine of futility, a party may be excused from

33

performing a condition precedent to enforcement of the contract, if performance of the condition would be futile." *Alvarez v. Rendon*, 953 So. 2d 702, 708-09 (Fla. 5th DCA 2007). "[T]he law does not require that a party to a contract take action that would clearly be futile." *Waksman Enters., Inc. v. Oregon Props., Inc.*, 862 So. 2d 35, 43 (Fla. 2d DCA 2003). Applying these doctrines here, there was no genuine dispute that Lane unequivocally repudiated its working capital obligations on January 22, 2021, and that the issuance of a unilateral capital call for January 2021 would have been an undeniably futile act.

Lane had until January 25, 2021 to pay the January 2021 Capital Call and avoid a default. (JSA106 (§ 8.1); JSA266.) With three days remaining to perform, Lane unequivocally told Skanska SE and Granite it would not "make any further capital contributions ***starting with the January [2021 Capital] Call***." (JSA275 (emphasis added); JSA305.) Deposition testimony confirmed that Lane was never going to pay that capital call (or any future capital calls) under any circumstances. (JSA196 ("At this point, Lane was not going to pay this call. We were heading toward litigation.").) Relying on this uncontroverted evidence, Granite argued that Lane's repudiation of its working capital obligations rendered its self-serving decision not to sign the form immaterial, and that it would have been undeniably futile to await Lane's approval of capital calls it declared it would not pay under any circumstances. (JSA73-74; JSA369.)

34

In its opposition, Lane argued that it never intended to cease performance of *all* obligations under the JVA—just its working capital obligations. (JSA311.) In paragraph 12 of Granite's statement of undisputed facts, citing Lane's deposition testimony, Granite asserted: "[W]hen the January 2021 Capital Call became due, Lane and Webuild decided Lane would file this lawsuit and stop contributing Working Capital to SGL." (JA770.) In response, Lane did "***not dispute*** that Lane and Webuild ultimately decided to file this lawsuit ***and to cease their working capital contributions***, in part, because of Skanska SE's repeated breaches of the JVA and its fiduciary duties." (JA800 (emphasis added).) Based on that concession, as confirmed by Lane's representative at deposition (JSA196), there was no genuine dispute that Lane had repudiated its obligations to "make any further capital contributions starting with the January [2021 Capital] Call." (JA743.)

In Lane's view, Skanska SE should have interpreted Lane's January 22, 2021 letter as a vote against the January 2021 Capital Call and then proceeded to perform the futile act of issuing a unilateral capital call under section 4.3(b). (JA950.) But the letter unequivocally stated that Lane would not "make ***any*** further capital contributions starting with the January [2021 Capital] Call," and Lane offered no evidence to the contrary. (JSA275 (emphasis added).) Therefore, even if the January 2021 Capital Call had not been unanimously approved, Lane's repudiation absolved Skanska SE of any obligation to proceed under section 4.3(b) and issue a unilateral

35

call that Lane already said it wasn't going to pay, rendering that act indisputably futile. *See, e.g.*, *Craigside, LLC v. GDC View, LLC*, 74 So. 3d 1087, 1090 (Fla. 1st DCA 2011) (seller had no obligation to provide notice of default required by the contract after buyer "unequivocally informed [seller] that [he] was not going to close on unit 1950" and "communicated an anticipatory repudiation which breached the agreement"); *Waksman*, 862 So. 2d at 43 (holding that the "undisputed facts in the record" established that the filing of an application for a building permit would have been a clearly futile act).

Although the district court considered Granite's repudiation and futility arguments on the record at the hearing (JA949-950), it did not explicitly reach them in entering summary judgment in Granite's favor on liability (JA994-997). Nevertheless, for the reasons stated above, this Court may affirm the district court's entry of summary judgment on these alternative grounds.

### 3. Lane's challenge to the district court's analysis on Granite's breach of contract claim should be rejected.

All parties are in agreement that Skanska SE did not issue the January 2021 Capital Call unilaterally, and that a section 7.2 audit is inapplicable to a unanimous capital call. The district court did not hold otherwise, and Lane's argument on these points is directed at a strawman.

There are two ways that a working capital call may be issued under the JVA: (i) by unanimous consent under section 7.1; or (ii) unilaterally by Skanska SE under

36

section 4.3(b). (JA1099 (§ 7.1); JA1096 (§ 4.3(b)).) In scenario (i), all parties agreed to the capital call. In scenario (ii), the dissenting party has the right to call for an audit. And in either scenario, as the district court noted, Lane would be required to pay its proportionate share. (JA997 ("[T]he JVA requires Lane to pay even if it disputed the call, and it did not pay.").) There was no avenue for Lane to block the issuance of a capital call or its obligation to pay its $6.3 million share for January 2021. For that reason, as the district court aptly noted, "any quibbles Lane has over the amounts called go to damages, not liability." (JA996.)

No one argued, and Judge Dalton never decided, that Skanska SE issued a unilateral call for January 2021. After concluding that Lane had "defaulted and materially breached" the JVA by not paying capital calls, Judge Dalton then turned to Lane's argument that the capital calls were not unanimous because Lane had not signed "working capital request forms." (JA995.) In response to that argument, Judge Dalton explained that if Lane objected to the calls, then "Skanska SE **_could_** act unilaterally to avoid a default" in which case Lane "still had to pay during the dispute." (JA996 (emphasis added).) He never said that Skanska SE **_did_** act unilaterally. This paragraph of the opinion merely explained how the JVA would have operated if Lane's self-serving decision not to sign a form was construed as a "no" vote: Skanska SE would act unilaterally and Lane would be required to pay $6.3 million, subject to its right for an audit (that Lane admits it would never have

37

ordered). There was no path for Lane to escape responsibility to pay the January 2021 Capital Call.

In the end, Lane's tortured reading of Judge Dalton's opinion fails to create a genuine dispute of material fact. The January 2021 Capital Call was issued after Mr. Penalver reviewed the draft working capital request and said it "look[ed] ok" to him. (JSA258-268.) Lane sat in silence for 37 days preparing this lawsuit before declaring it would not "make any further capital contributions starting with the January [2021 Capital] Call." (JSA275-276.) Lane's post hoc "explanation of convenience" (JA949) does not create a genuine dispute of material fact, and the entry of summary judgment on Granite's breach of contract claim should be affirmed.

### B. Lane and Webuild abandoned any challenge to the entry of summary judgment on Granite's indemnification claims.

Granite's indemnification claims against Lane and Webuild exist independently of its Article 7 breach of contract claim.[11] In Lane's own words, "Article 3.2 [indemnification] is not tied to the issuance of cash calls under Article 7. Rather, Article 3.2 provides a separate avenue for a party to recover if it contributes more than its proportionate share ***for any reason***." (JSA1517 (emphasis added).) Granite agrees. But despite their acknowledgement that the "district court

---

[11] Granite made this point clear in its motion and reply. (JSA364 ("Lane's Article 3 obligations to pay its Proportionate Share of SGL's losses and indemnify Granite for amounts paid in excess of Granite's Proportionate Share are not conditioned on the issuance and subsequent non-payment of an Article 7 Working Capital Call.").)

awarded damages under the general indemnification provision at Article 3.2," (Appellants' Br. at 56), Lane and Webuild elected not to challenge the entry of summary judgment on Granite's indemnification claims on appeal.

This Court has "long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). "[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes [this Court from] considering the issue on appeal." *Singh v. United States Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (citing *Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998)).

Granite's indemnification claims are not mentioned in the Statement of Issues or Summary of Argument. (*See* Appellants' Br. at 3, 27-28.) There are passing references to the entry of summary judgment on these claims in the heading and introductory paragraph at the bottom of page 48, but Lane and Webuild offer no argument at all on this topic. Lane does not argue there exists a genuine dispute as to whether Granite paid more, or Lane paid less, than their respective proportionate shares. The CGIA's indemnification provisions are not mentioned once. Simply put, Lane and Webuild have not offered this Court a single argument as to why the entry

39

of summary judgment on Granite's indemnification claims could or should be vacated.

"When, as in this case, a party fails to 'devote a discrete, substantial portion' of his appellate brief to an issue and, instead, 'buries' the issue within other arguments, the issue is deemed abandoned." *Lance Toland v. Phoenix Ins. Co.*, 855 F. App'x 474, 481 n.6 (11th Cir. 2021). That is precisely what Lane and Webuild did here. Accordingly, any challenge to the entry of summary judgment on Granite's indemnification claims has been abandoned. *See O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1055 (11th Cir. 2022) (holding that the plaintiffs abandoned their vagueness challenge where the term "vagueness" was used only once in an argument section); *Novum Structures, LLC v. Choate Constr. Co., Inc.*, 698 F. App'x 608, 609 (11th Cir. 2017) (affirming judgment where the appellant failed to challenge the entry of summary judgment on counterclaims for breach of contract and indemnification).

Even if it had been raised on appeal, the entry of summary judgment on Granite's indemnification claims would be affirmed. "With respect to determining contractual indemnification issues, summary judgment is generally appropriate inasmuch as the construction and legal effect of a written contract are matters of law to be determined by the Court." *Fidelity & Guar. Ins. Co. v. Ford Motor Co.*, 707 F. Supp.2d 1300, 1312 (M.D. Fla. 2010). Here, there was no genuine dispute that: (i)

Granite paid far more than its proportionate share of SGL's losses; (ii) Lane paid far less than its proportionate share of SGL's losses; and (iii) SGL's losses were not caused by Granite's willful misconduct or bad faith. (JSA96-97; JSA137-138.) Lane and Webuild do not challenge that conclusion here and Granite does not intend to invite such a challenge in the reply brief. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (any issues not briefed on appeal are deemed abandoned, refusing to consider jurisdictional argument raised for the first time in a reply brief); *see also Gareis v. 3M Co.*, 9 F.4th 812, 819 n.4 (8th Cir. 2021) (refusing to address challenge to entry of summary judgment on other claims where the challenge was not raised until the reply brief).

**C.    Webuild forfeited any challenge to the entry of summary judgment on Granite's breach of guaranty claim.**

In its jurisdictional statement, Webuild says it's challenging the district court's entry of summary judgment on Granite's breach of guaranty claim. (Appellants' Br. at x.) But beyond the jurisdictional statement, there is no mention of that claim in the brief. Nor is there any mention of the CGIA, which contains a set of "separate and cumulative remedies" available to Granite. (JSA284 (§ 6).) As with its purported challenge to Granite's indemnification claim, Webuild forfeited this one too. *See Sapuppo*, 739 F.3d at 681; *Novum Structures*, 698 F. App'x at 609.

41

## II.    THE DISTRICT COURT'S FINAL JUDGMENT MUST BE AFFIRMED BECAUSE LANE AND WEBUILD DO NOT CHALLENGE THE ENTRY OF JUDGMENT ON GRANITE'S CLAIMS FOR INDEMNIFICATION AND BREACH OF GUARANTY.

"To obtain reversal of a district court's judgment that is based on multiple, independent grounds, an appellant must convince [this Court] that every stated ground for the judgment against him is incorrect." *Sapuppo*, 739 F.3d at 680. Here, the district court entered final judgment against Lane and Webuild, jointly and severally, in the principal amount of $30,450,997.15 on all three of Granite's claims for breach of contract, indemnification, and breach of guaranty. (JA4641; JA4676-4677.) Lane and Webuild acknowledged this point,[12] but elected not to challenge the entry of judgment on Granite's indemnification or breach of guaranty claims.

So, even if this Court were to hold that summary judgment was improperly granted on Granite's breach of contract claim, the award of damages would be supported by the unchallenged indemnification and breach of guaranty claims. *See, e.g.*, *Okada v. Whitehead*, 759 F. App'x 603, 605-06 (9th Cir. 2019) (holding that even if the district court erred in granting summary judgment based on an erroneous interpretation of a settlement agreement, the judgment could not be reversed because

---

[12] Appellants' Br. at x ("This appeal challenges the district court's summary judgment for . . . Granite on [its] claims for breach of contract, indemnification, and guarantee; and the final judgment for . . . Granite on damages . . . ."); *id.* at 56 ("[T]he district court awarded damages under the general indemnification provision at Article 3.2 . . . .").

42

the defendant failed to challenge three independent grounds for the jury's single award of damages). On those unchallenged claims alone, the judgment can be affirmed. *See Sapuppo*, 739 F.3d at 680 ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed."); *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1327 (11th Cir. 2015) ("Because [appellants] have failed to challenge the other grounds upon which the district court based its grant of summary judgment to FedEx, they have abandoned any challenges to those grounds, and the district court's judgment must therefore be affirmed."); *Kellner v. NCL (Bahamas), LTD.*, 753 F. App'x 662, 665 (11th Cir. 2018) (holding that any consideration of appellant's argument on causation would be "futile" due to appellant's failure to challenge the district court's ruling on damages in her initial brief, which formed an independent basis for judgment).

### III. THE DISTRICT COURT'S AWARD OF PREJUDGMENT INTEREST MUST BE AFFIRMED.

Using Florida's statutory interest rates, the district court awarded $5,828,127.19 in prejudgment interest to Granite. (JA4677; *see also* JSA1496-1512.) The underlying calculation was admitted into evidence without objection, and Lane does not challenge that calculation here. (JA4387-4388; JSA1260; *see also* JSA1496-1512.) Instead, Lane argues that the district court was prohibited from

awarding any statutory prejudgment interest because "Article 8.2 provides the exclusive mechanism for obtaining prejudgment interest on defaulted capital calls." (Appellants' Br. at 57.) Because Granite was not entitled to prejudgment interest under section 8.2, says Lane, Granite was entitled to no prejudgment interest at all.

This "exclusive mechanism" argument must be rejected for two reasons. *First*, Lane forfeited the issue by waiting until its appellate brief to raise it. And *second*, had it been raised, it would have been rejected by the district court (and again here) because it conflicts with well-settled Florida law. Lane's novel attempt to secure interest-free financing on the nearly $80 million it borrowed from Granite and Skanska SE must fail. For these reasons, the award of prejudgment interest should be affirmed.

### A.    Lane forfeited its sole challenge to the district court's award of prejudgment interest.

"Judicial economy is served and prejudice is avoided by binding the parties to the facts presented and the theories argued below." *Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 (11th Cir. 1994). "This Court has 'repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.'" *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quoting *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994)). Lane's new appellate theory—that the district court was prohibited from awarding statutory prejudgment interest—was never raised below.

Start with the parties' pre-trial filings. Granite presented the district court with two options for calculating prejudgment interest on the amounts Granite paid in excess of its proportionate share. (JA1033-1034.) The primary calculation was based on the theory that a portion of Granite's overpayments ($24,960,000 of the $30,450,997.15) should be treated as demand loans under section 8.2 of the JVA, entitling Granite to a higher interest rate (11.50% at the time of trial), with the balance ($5,490,997.15) accruing interest at Florida's statutory rate (8.54% at the time of trial). (JA1033-1034.) The alternative calculation applied Florida's statutory rates to the entire amount of Granite's overpayments ($30,450,997.15). (JA1034.) Lane's appellate theory that section 8.2 of the JVA was Granite's "exclusive mechanism" for securing prejudgment interest appeared nowhere in Lane's pre-trial filings.

Lane's appellate theory was never raised at trial. Granite's interest calculations were admitted into evidence without objection. (JA4383-4388.) Undersigned counsel identified both the primary and alternative interest calculations during closing arguments. (JA2521.) Lane's "exclusive mechanism" theory was never raised at any point during the trial.

Lane could have attempted to raise this appellate contention during post-trial briefing. *See, e.g.*, *Compulife Software, Inc. v. Newman*, 111 F.4th 1147, 1158 (11th Cir. 2024). But Lane only argued that Granite was not entitled to *demand loan*

45

interest. (JA4578-4580.) Lane's theory that the district court was prohibited from awarding *statutory* interest was not raised in, and therefore not considered by, the district court.

In fact, Lane took the *opposite* position leading up to the entry of final judgment. The district court held that Granite was owed $30,450,997.15 "plus interest," and directed the parties to submit a "joint proposed final judgment" with "the appropriate calculation of prejudgment interest." (JA4641.) Instead of a joint submission, Lane filed its own proposed judgment. Lane cites that proposed judgment (JA4652-4654) as its "objection" to Granite's claim for prejudgment interest. But that "objection" was only to the date on which statutory prejudgment interest began to accrue. (JA4654.) Lane *agreed* that Granite was entitled to statutory prejudgment interest but argued that interest should have only started to accrue on May 3, 2024 "because the [district court] did not determine the amount of damages or the theory under which they were owed until that time." (JA4652.) Lane actually asked the district court to award Granite "prejudgment interest through and including May 17, 2024 in the amount of $124,333.13, plus prejudgment interest of $7,770.82 per day from May 18, 2024 until the date of this Final Judgment . . . ." (JA4659.)

Before this Court, Lane no longer argues that statutory prejudgment interest should have started to accrue on May 3, 2024. Instead, Lane argues for the first time that the district court was prohibited from awarding *any* prejudgment interest

46

because section 8.2 of the JVA was the district court's "exclusive mechanism" for awarding interest. (Appellants' Br. at 57.) Lane never raised this issue in the district court and is prohibited from raising it here. *See Balboa Capital Corp. v. Vital Pharmaceuticals, Inc.*, No. 21-13263, 2023 WL 2609628, *6 (11th Cir. Mar. 23, 2023) (per curiam) (holding that the appellant waived or forfeited three separate challenges to the award of prejudgment interest by failing to raise them below, including a novel argument that a particular statute "does not authorize prejudgment interest"); *see also Asdale v. Int'l Game Tech.*, 549 F. App'x 611, 614 (9th Cir. 2013) (refusing to address challenge to district court's calculation of prejudgment interest where the appellant "did not object to the prejudgment interest rate that the district court used"); *Eastern Mountain Platform Tennis, Inc. v. Sherwin-Williams Co., Inc.*, 40 F.3d 492, 504 (1st Cir. 1994) (refusing to address challenge to award of prejudgment interest on future lost profits where Sherwin-Williams only objected to the award of interest on the "punitive" portion of the judgment).

In sum, Granite told Lane it was seeking prejudgment interest at the demand loan rate or, in the alternative, at the statutory rate. (JA1033-1034.) Lane argued that Granite was not entitled to interest at the demand loan rate (JA4578-4580) and declined to object to the admission of Granite's calculations using the statutory rate (JA4383-4388). Because Lane never challenged Granite's entitlement to statutory prejudgment interest in the district court below, that challenge has been forfeited and

47

should not be considered here. *See AM Grand Court Lakes LLC v. Rockhill Ins. Co.*, 68 F.4th 1354, 1362 n.11 (11th Cir. 2023) (refusing to consider argument that certain damages were not recoverable under Florida law where the appellant "never took this position in the district court and instead raises it for the first time on appeal").

**B.    Granite was entitled to prejudgment interest as a matter of law and the district court's award of prejudgment interest at the statutory rate should be affirmed.**

Even if Lane had preserved this issue for appeal, Lane's novel theory conflicts with well-settled Florida law and should be rejected. "'Whether a successful claimant is entitled to prejudgment interest is a question of state law,' subject to de novo review." *Millennium Partners*, 494 F.3d at 1304 (quoting *Venn*, 99 F.3d at 1066). Under Florida law, "a plaintiff is entitled to prejudgment interest as a matter of law." *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007) (citing *Argonaut*, 474 So. 2d at 215). So, as the prevailing party, Granite was entitled to prejudgment interest as a matter of law. *Gemini Ins.*, 119 F.4th at 1303 (quoting *Argonaut*, 474 So. 2d at 215).

Florida's statutory rate applies by default. *DSLRPros, Inc. v. Lalo*, 339 So. 3d 379, 383 (Fla. 3d DCA 2021) ("By default, the statutory interest rate applies.") (citing Fla. Stat. Ann. § 687.01). "This default rule, of course, may be modified by contract." *Id.* The sole issue before the district court was whether Granite was entitled to prejudgment interest based on a combination of the JVA's demand loan

48

rate and Florida's statutory rate or, in the alternative, just at Florida's statutory rate. *See Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 572 (11th Cir. 1991) (citing *Argonaut*, 474 So. 2d at 215, for the proposition that "the judiciary is without discretion to set an interest rate, and is obligated to follow [Fla. Stat. Ann.] § 687.01"). The district court ruled that Granite was not entitled to interest at the JVA's demand loan rate. (JA4640.) So, by default, Granite was entitled to interest at the statutory rate. *See DSLRPros*, 339 So. 3d at 383 (affirming the trial court's use of the statutory interest rate where the contractual rate did not apply); *Trigeorgis v. Trigeorgis*, 240 So. 3d 772, 776-77 (Fla. 4th DCA 2018) (holding that the trial court should have applied the statutory interest rate where the contractual rate did not apply); *Celotex Corp. v. Buildex, Inc.*, 476 So. 2d 294, 296 (Fla. 3d DCA 1985) (reversing award of prejudgment interest where the contractual rate of 18% should not have been applied and remanding "for an award of prejudgment interest at the statutory rate"); *Secrist v. Nat'l Service Indus., Inc.*, 395 So. 2d 1280, 1284 (Fla. 2d DCA 1981) (holding that contractual interest was proper on damages awarded under paragraph 8 of the contract, but statutory interest should have been awarded for lost profits under the liquidated damages clause).

Lane cites no authority for its novel proposition that the district court was prohibited from awarding interest at the statutory rate. The single case cited by Lane—*Kel Homes, LLC v. Burris*, 933 So. 2d 699 (Fla. 2d DCA 2006)—has nothing

49

to do with prejudgment interest. At issue in *Kel Homes* was whether a general arbitration clause in a real estate contract required arbitration of a claim for specific performance where another clause in the same contract permitted a "suit" for specific performance. 933 So. 2d at 703-04. It is unclear why this case appears in Lane's brief. Lane cites no caselaw or legal authority for this Court to disturb the district court's decision to award prejudgment interest at the statutory rate.[13]

In sum, Florida law is clear that Granite was entitled to prejudgment interest at the statutory rate unless a contractual rate applied. *DSLRPros*, 339 So. 3d at 383; *Argonaut*, 474 So. 2d at 215. The district court held that the contractual rate did not apply and, by default, awarded prejudgment interest at the statutory rate consistent with Florida law and the evidence presented at trial. The award should be affirmed.

**C.    If the judgment is modified, the Court should direct the district court to award prejudgment interest up through the date of the modified judgment.**

As discussed above, Granite was awarded statutory prejudgment interest through the date of final judgment (July 26, 2024), with postjudgment interest accruing immediately thereafter. (JA4680-4681.) If this Court directs the entry of a

---

[13] Lane did not challenge the methodology behind Granite's calculation of prejudgment interest in the district court (*i.e.*, the dates on which Granite's losses were incurred or the manner in which the interest was calculated) and forfeited any challenge to that methodology here. *See Hamilton Bank, N.A. v. Kookmin Bank*, 245 F.3d 82, 93-94 (2d Cir. 2001) (party waived challenge to the dates used to calculate prejudgment interest by failing to raise that issue below).

modified judgment below, then Granite is entitled to statutory prejudgment interest up through the entry of the *modified* final judgment on remand. *See, e.g.*, *Gemini Ins.*, 119 F.4th at 1304 (directing entry of amended judgment with prejudgment interest "to the date of the amended final judgment"); *Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co.*, 233 F. App'x 890, 895 (11th Cir. 2007) (agreeing that prejudgment interest continued to accrue up through the date the judgment was entered on remand); *SEB*, 476 F.3d at 1321 ("Because postjudgment interest . . . began to accrue on the date of the amended judgment, the district court should have awarded prejudgment interest until that date."). Granite respectfully requests that, if the judgment is modified, the Court include instructions to this effect in its mandate. *See* Fed. R. App. P. 37(b) ("If the court modifies or reverses a judgment with a direction that a money judgment be entered in the district court, the mandate must contain instructions about the allowance of interest.").

## CONCLUSION

For the foregoing reasons, the district court's decisions to enter summary judgment and final judgment in favor of Granite and against Lane and Webuild should be affirmed in full. In the event the judgment is modified and this Court directs the entry of a modified judgment below, Granite respectfully requests that the Court include instructions in its mandate for the district court to recalculate statutory prejudgment interest up through the entry of the modified judgment.

51

Dated: December 23, 2024          Respectfully submitted,

*/s/ Christopher J. Olsen*
Christopher J. Olsen
**HENNER & SCARBROUGH LLP**
14 Ridge Square NW, Suite 300
Washington, DC 20016
Phone: (470) 531-3070
colsen@henscarlaw.com

Joseph P. Henner
Tyler P. Scarbrough
**HENNER & SCARBROUGH LLP**
2000 RiverEdge Pkwy, Suite 550
Atlanta, GA 30328
Phone: (470) 531-3077
jhenner@henscarlaw.com
tscarbrough@henscarlaw.com

*Counsel for Granite Construction Company*

52

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,444 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 point.

Dated: December 23, 2024          Respectfully submitted,

/s/  Christopher J. Olsen
Christopher J. Olsen
**HENNER & SCARBROUGH LLP**
14 Ridge Square NW, Suite 300
Washington, DC 20016
Phone: (470) 531-3070
colsen@henscarlaw.com

Joseph P. Henner
Tyler P. Scarbrough
**HENNER & SCARBROUGH LLP**
2000 RiverEdge Pkwy, Suite 550
Atlanta, GA 30328
Phone: (470) 531-3077
jhenner@henscarlaw.com
tscarbrough@henscarlaw.com

*Counsel for Granite Construction Company*

53

## CERTIFICATE OF SERVICE

I hereby certify that, on December 23, 2024, the foregoing was electronically served via the Court's CM/ECF system on all counsel of record, and a true copy will be sent via overnight mail to all counsel of record.

Dated: December 23, 2024        Respectfully submitted,

*/s/  Christopher J. Olsen*
Christopher J. Olsen
**HENNER & SCARBROUGH LLP**
14 Ridge Square NW, Suite 300
Washington, DC 20016
Phone: (470) 531-3070
colsen@henscarlaw.com

Joseph P. Henner
Tyler P. Scarbrough
**HENNER & SCARBROUGH LLP**
2000 RiverEdge Pkwy, Suite 550
Atlanta, GA 30328
Phone: (470) 531-3077
jhenner@henscarlaw.com
tscarbrough@henscarlaw.com

*Counsel for Granite Construction Company*

54